# Guillermina Vega, et al.

## v.

# Chattan Associates, Inc.

Record No. 921913

September 17, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, Hassell, and Keenan, JJ., and Poff, Senior Justice

*Mary M. Jolma; Alan S. Toppleberg (Raymond B. Benzinger*, on briefs), for appellants.
*William P. Daly, Jr. (Rees, Broome & Diaz*, on brief), for appellee.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

In this dispute involving a contract for the sale of land, the trial court entered judgment upon a jury verdict in favor of Chattan Associates, Inc. (Chattan) against Guillermina Vega (Vega) for $11,325.05 and against Russell Lamay and Yvonne Lamay (the Lamays) for $11,500. Finding no error in the judgment, we will affirm.

Under a contract dated November 17, 1989, Chattan agreed to purchase a tract of land containing approximately two acres, composed of one parcel owned by Vega and another owned by the

Lamays. Upon execution of the contract, Chattan paid deposits of $8,000 to Vega and $4,000 to the Lamays. An addendum to the contract provided for settlement no later than March 31, 1991.

The contract was subject to several conditions precedent, including "Sellers having received final approval from Fairfax County for subdivision of the subject property," "Sellers getting approval from the Fairfax County Health Department for a five . . . bedroom percolation site," and "the obtaining of financing acceptable to [Chattan]." The contract also contained provisions stating that "[i]n the event [the] contract is declared null and void due to [certain] circumstances . . ., Sellers will reimburse Purchaser" for the deposits it had paid and "any other costs" it might have incurred in preparation for improving the land.

An approved subdivision plat was recorded on February 28, 1991. However, on March 22, 1991, Chattan notified Vega that the contract was, by its terms, null and void because of Chattan's inability to obtain acceptable financing, and on April 1, 1991, Chattan notified the Lamays to the same effect.[1]

Chattan made demand upon Vega and the Lamays for return of the deposit money and for reimbursement of the improvement costs it had incurred. When Vega and the Lamays refused Chattan's demand, this litigation ensued. The jury awarded Chattan the full amount of the deposit money and the exact sum claimed for improvement costs.

Vega and the Lamays (collectively, the defendants) first contend that Chattan is barred from recovery because it has maintained throughout this litigation that the contract became null and void when it invoked the condition precedent relating to financing, yet it seeks to enforce the agreement through an action for breach of contract.[2] The defendants argue that "[a] contract which fails for the failure of a condition precedent to be met is a void contract and the parties are relieved of the obligations under it." Continuing, the defendants say "[i]t is well settled that a contract which is null and void cannot be enforced."

---

[1] No point is made on appeal of the fact that the notification to the Lamays was not given until after the date for settlement called for in the addendum.

[2] The defendants make the gratuitous concession on brief that while Chattan cannot enforce the terms of the agreement through a breach of contract action, it "may have a cause of action in unjust enrichment which it did not plead in its Motion for Judgment." Because we find that Chattan may enforce the agreement through a breach of contract action, we need not comment on the defendants' concession.

We disagree with the defendants. The determinative question here is whether the deposit-refund and cost-reimbursement provision of the contract is severable from the provision permitting a declaration that the contract is null and void. Whether contractual provisions are severable is determined from the intention of the parties. *Eschner v. Eschner*, 146 Va. 417, 422, 131 S.E. 800, 802 (1926).

From a consideration of the contractual terms outlined above, it is obvious the parties intended that the provision relating to deposit refund and cost reimbursement would be severable and would survive the contract becoming null and void according to its terms. To read the contract otherwise would render the deposit-refund and cost-reimbursement provision meaningless.

The contract is to be construed as a whole, and "[n]o word or clause is to be treated as meaningless if any reasonable meaning consistent with the other parts of the contract can be given to it." *Ames v. American Nat'l Bank*, 163 Va. 1, 39, 176 S.E. 204, 216 (1934) (footnote omitted). Treating the deposit-refund and cost-reimbursement provision as severable gives meaning and consistency to the entire contract.

The defendants next contend that Chattan is not entitled to recover because the events specified in the contract that would trigger the defendants' obligation to refund deposit money and reimburse development costs did not occur. In a portion of the contract that may be termed the "null and void clause," it is provided as follows:

In the event this contract is declared null and void due to circumstances which hold the Purchaser not in default, as provided for elsewhere in this contract, Sellers will reimburse Purchaser for all monies disbursed by Purchaser for Lot purchase, and, as provided for elsewhere in this contract, for any other costs necessary to obtain Fairfax County approval of a five (5) bedroom percolation site and survey and engineering costs incurred to sub-divide and record subject lot. Purchaser is to be reimbursed within one hundred and twenty (120) days of this contract being declared null and void.

The defendants say that in only two situations is their liability to refund the deposit money "provided for elsewhere in [the] contract": (1) when the contract is declared null and void because of a defect in title that cannot be remedied by the sellers at an "expense

. . . not to exceed Ten Thousand Dollars"; and (2) when the contract is declared null and void based upon the existence of "easements, covenants, conditions, rights-of-way, or restrictions of record which will . . . prevent the Purchaser's intended development and/or use of the property." The defendants maintain there was no evidence presented at trial of title defects or anything of record that would have prevented Chattan's intended development or use of the property. Hence, the defendants conclude, there was no contractual basis for Chattan's recovery of the deposit money.

Similarly, the defendants say that in only two situations is their liability to reimburse Chattan for development costs "provided for elsewhere in [the] contract." In one contractual provision, it is stated that the Lamays shall

pay [Chattan] at settlement the first Seven Thousand Five Hundred Dollars ($7,500), in engineering, surveying, soils testing, Fairfax County fees, and legal fees.

In another provision, it is stated that Vega shall

reimburse [Chattan] for these costs above $7,500 at settlement or if this contract becomes null and void, within one hundred and twenty (120) days of contract becoming null and void, as provided for elsewhere in this contract.

The defendants maintain that because settlement never took place and "the circumstances which would have caused [the] contract to become 'null and void'" never occurred, their "obligation to reimburse [Chattan] its costs never matured." Hence, the defendants conclude, "the Trial Court committed reversible error in not granting [their] Motions to Vacate the Jury Verdict."

The difficulty with the defendants' argument is that it ignores the significance of the contingency provisions in the contract. In the defendants' view of the matter, Chattan would have forfeited all the money it paid upon the failure of one party or the other to meet one of the contingencies, whether the failure consisted of Chattan's inability to obtain acceptable financing or the defendants' own dereliction of duty to record an approved plat of subdivision or to "get" approval for a five-bedroom percolation site.

The defendants do not question the bona fides of Chattan's representation that it was unable to meet the contingency of

obtaining acceptable financing. The defendants recognize that the contingency constitutes a condition precedent, and they acknowledge that "when a contract fails because a condition precedent cannot be met, the contract is null and void by operation of law." Yet, all they have to say about the financing contingency is that "the contract does not identify [it] as an event whereby the contract would be null and void and thereby trigger any repayment obligation in defendants."

We think, however, that the failure to meet the contingency relating to financing is identified in the "null and void clause" as a circumstance "which hold[s] the Purchaser not in default, as provided for elsewhere in [the] contract," permitting Chattan to declare the contract null and void. In turn, Chattan's declaration triggers the remainder of the "null and void clause," which provides that, within 120 days, "Sellers will reimburse Purchaser for all monies disbursed by Purchaser for Lot purchase, and, as provided for elsewhere in this contract, for any other costs necessary to obtain Fairfax County approval of [the building] site and survey and engineering costs incurred to sub-divide and record subject lot."

It is true that the provision of the "null and void clause" entitling Chattan to reimbursement of "all monies disbursed . . . for Lot purchase" and "any other costs" appears to conflict with the provisions of the contract conditioning Vega's and the Lamays' liability upon the occurrence of settlement. But the same sentence that conditions Vega's liability for the costs "above $7,500" upon the occurrence of settlement also makes her liable upon the "contract becom[ing] null and void, . . . as provided for elsewhere in this contract."

Further, the seemingly conflicting provisions concerning the Lamays' liability can be reconciled by viewing them as displaying an intention of the parties that the Lamays would be liable to Chattan for the first $7,500 of development costs whether the contract was settled or became null and void according to its terms. This view is consistent with the contractual terms that imposed upon the sellers the responsibility for recording an approved plat of subdivision and for "getting approval . . . for a five . . . bedroom percolation site." The reasons for the Lamays' assumption of the first $7,500 of costs and Vega's assumption of "[those costs] above $7,500" are irrelevant here, but the contract itself states that the division of liability was made "to benefit the Vega cost basis for tax purposes."

 In any event, at most, the conflict created an ambiguity, justifying the trial court's action in admitting parol evidence to show the true intention of the parties. *Chesapeake Corp. v. McCreery*, 216 Va. 33, 37-38, 216 S.E.2d 22, 25 (1975). Although there was sharp divergence in the parol evidence submitted by the opposing parties, it was for the jury to resolve the conflict, and the evidence supports the jury's decision to resolve it in Chattan's favor.

Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*