27 F.3d 565
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
WINSCORE ASSOCIATES, L.P., Plaintiff-Appellant,
v.
The RYLAND GROUP, INCORPORATED, Defendant-Appellee.
 No. 93-1908.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 13, 1994.
Decided: June 17, 1994.
 
 1
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-92-1416-A)
 
 
 2
 John Michael Craig, Keck, Mahin & Cate, Washington, D.C., for Appellant.
 
 
 3
 Michael O'Reilly, Rees, Broome & Diaz, P.C., Vienna, Virginia, for Appellee.
 
 
 4
 Frank J. Carmel, Keck, Mahin & Cate, Washington, D.C., for Appellant.
 
 
 5
 Susan A. Richards, Rees, Broome & Diaz, P.C., Vienna, Virginia, for Appellee.
 
 
 6
 E.D.Va.
 
 
 7
 AFFIRMED.
 
 
 8
 Before NIEMEYER, Circuit Judge, SPROUSE, Senior Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.
 
 OPINION
 PER CURIAM
 
 9
 This is an appeal from a judgment of the United States District Court for the Eastern District of Virginia, entered following trial. The jury denied appellant any damages apart from the liquidated damages provided in a land sales agreement. Appellant asserts that the court improperly allowed parol evidence to vary the terms of the contract and that it also erred by excluding testimony of appellant's expert witness. We affirm the judgment entered by the district court.
 
 
 10
 Appellant Winscore Associates, L.P., ("Winscore") is a property owner that entered into a land sales agreement with appellee The Ryland Group, Inc. ("Ryland"). Ryland is a builder. It agreed to purchase certain land developed by Winscore at the rate of fifteen townhouse lots per quarter. It also agreed to provide Winscore a $500,000 irrevocable letter of credit that could be drawn down by Winscore if Ryland failed to purchase lots timely. In November, 1990, Ryland advised Winscore that it could not keep pace with the purchase schedule. The parties then entered into negotiations that resulted in an addendum to the land sales agreement reducing the purchase schedule to three lots per month and reducing the time for default notice.
 
 
 11
 Winscore argues that the addendum also increased its remedies for default to include all state law remedies for breach of a land sales contract, and that its remedies were not limited to drawing down the $500,000 letter of credit. Ryland asserts that the addendum did not alter the remedies clause of the original agreement except to the extent that it shortened the time period within which Ryland could cure a default from thirty to five days. This dispute was the subject of trial in the district court.
 
 
 12
 The relevant clauses of the contract at issue read as follows:
 
 
 13
 (From Original Land Sales Agreement)
 
 
 14
 In the event Buyer wrongfully fails to complete purchase of the said lots as described herein, except as otherwise provided herein, Seller shall have, as its sole remedy, the right to draw Buyer's letter of credit, or any amounts remaining available to draw, and forfeit said deposit monies, as agreed liquidated damages, and thereafter this Agreement shall become null and void and neither party shall have any further rights and/or liabilities hereunder. (App. at 14).
 
 
 15
 (From First Addendum to Land Sales Agreement)
 
 
 16
 In the event Buyer fails to purchase a minimum of three (3)lots per month, Seller may exercise all of Seller's remedies for a default by Buyer after giving Buyer five (5)days written notice specifying the default and action to be taken by Seller. (App. at 40).
 
 
 17
 Each side argues on appeal that the contract unambiguously states its view. The record before this court does not reveal that appellant made this argument at the time of trial, although appellee clearly did so. (T. 14-15.) The district court, however, found the contract to be ambiguous when the addendum and the original contract are read together. (T. 71-72.)[1] Apparently the court concluded that the use of the term "sole remedy" in the original contract and the plural "remedies" in the addendum was the source of the ambiguity. Thus, it allowed both sides to present evidence as to the intent of the parties to the agreement. See Vega v. Chattan Assocs., Inc., 435 S.E.2d 142, 145 (Va.1993) (parol evidence admissible when conflicting contractual provisions create an ambiguity).
 
 
 18
 We find that the district court did not err in rejecting the proposition that the addendum unambiguously restored all of Winscore's common law remedies. To arrive at that conclusion, the court would have to rewrite the addendum to refer to "a seller's remedies," instead of "Seller's remedies." "Seller" is simply an alternative designation for "Winscore," as the first paragraph of the original contract makes clear. (App. at 13). A much more straightforward reading of the addendum is that it preserves whatever remedies Winscore has vis-avis Ryland pursuant to the original contract, not that it creates new remedies for breach of the contract.
 
 
 19
 Appellant's next basis for appeal is that the district court allowed opinion testimony of the attorney who represented Ryland in preparing the contract documents, after indicating it would not allow opinion testimony from appellant's expert on custom and usage. Appellant objected at trial to a question that arguably asked for the opinion of Ryland's attorney as to the legal meaning of a contractual term.[2] (T.222). Ryland's attorney, however, responded with regard to his intent in drafting the contract. (T. 222.) It would seem virtually impossible to separate Ryland's attorney's view of what he intended the agreement to be in his capacity as agent for Ryland and in his capacity as the legal drafter of the contract for Ryland. The questioning was not designed to draw such fine distinctions, if indeed they can be drawn. In any case, as the intent of the parties had been squarely put at issue, we find no harmful error on this point.
 
 
 20
 The final claim of error also relates to the testimony of Ryland's attorney. Winscore argues that even if Ryland's attorney properly could give his view of the intended meaning of the contract, this testimony gave Ryland an unfair advantage in that Winscore's witness as to the intent of the parties was not an attorney. Thus, Winscore sought to present the testimony of a Virginia attorney in regard to the customary meaning of the words used in the contract among real estate attorneys in the Northern Virginia area. As indicated, intent was put in issue and an attorney who was party to the negotiations is not disqualified from testifying as to the parties' intent. The court was willing to hear witnesses from both sides on the issue of intent, but determined not to hear Winscore's "expert," a stranger to the transaction, on general customs and usage. It concluded such testimony would not aid the jury. (T. 251.)
 
 
 21
 The district court has broad discretion in determining whether to accept expert testimony. See Sparks v. Gilley Trucking Co., 992 F.2d 50, 53 (4th Cir.1993). There is no reason to conclude from this record that any of the terms in the clauses at issue had special meaning in the home building or land sales industries or that the proffered witness had particular expertise in these fields. See Piland Corp. v. Rea Constr. Co., 672 F.Supp. 244, 247 (E.D. Va.1987) (finding custom and usage testimony admissible where it concerns the subject matter of the contract). The court's determination that this testimony would not aid the jury was not an abuse of discretion.
 
 
 22
 In conclusion, there is no reason to upset the jury verdict. The district court gave Winscore every reasonable opportunity to make its case before the jury. The judgment of the district court is therefore
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 We will assume for the sake of argument that appellant preserved its right to appeal this point
 
 
 [2]
 All cites to the transcript refer to the transcript of the first day of trial proceedings, Tuesday, May 11, 1993