Kimberly R. PITCHFORD, Plaintiff,

v.

OAKWOOD MOBILE HOMES, INC., et al., Defendants.

Civil Action No. 5:99CV00053.

United States District Court, W.D. Virginia, Harrisonburg Division.

Nov. 13, 2000.

Timothy Earl Cupp, Cupp & Cupp, P.C., Harrisonburg, VA, Thomas Dean Domonoske, Dale Wood Pittman, Law Office of Dale W. Pittman, Petersburg, VA, for Plaintiff.

Rosalie Pemberton Fessier, Boyce Eugene Brannock, Timerlake, Smith, Thomas & Moses, P.C., Staunton, VA, for Defendants.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Before the court is a motion by the defendants to compel arbitration and stay proceedings in the above-captioned civil action, pursuant to an arbitration agreement between the parties. The matter was referred to the presiding United States Magistrate Judge, B. Waugh Crigler, pursuant to 28 U.S.C. § 636(b)(1)(B) for recommended findings of fact and a proposed disposition. The Magistrate recommended that the court deny the defendants' motion to compel. Both parties filed timely objections to the Report and Recommendation and the court shall make a *de novo* review. See 28 U.S.C. § 636(b)(1)(C).

### I.

Kimberly Pitchford signed a Retail Installment Contract ("contract") with Oakwood Mobile Homes, Inc ("Oakwood") on June 19, 1997, agreeing to purchase a mobile home for $46,200. Pitchford paid a cash down payment of $2500 and financed the balance through defendant Oakwood Acceptance Corporation ("Oakwood Acceptance").

Pitchford was in immediate need of a place to live due to her personal circumstances of recently being divorced and caring for her four young children. Pitchford responded to an advertisement by Oakwood for a mobile home, went to Oakwood's Harrisonburg Office to view the mobile homes one day, and returned the following day to purchase a mobile home. The plaintiff met with a sales agent [1] for approximately 20–30 minutes to execute all of the relevant documents. The plaintiff apparently took considerable care in reviewing the six-page contract, which purported to embody the entire agreement of the parties. The sale was "subject to the terms of this Contract," the term "Contract" being defined as "this document and any separate document that secures this Contract." After signing the contract, the plaintiff was presented with sixteen pages of documents, eight of which required her signature, none of which "secured the contract." Of these documents, the only one to purport to add materially to the terms of the contract was the Arbitration Agreement.

The Arbitration Agreement is the source of the present dispute between the parties, the plaintiff contending on various grounds that the agreement is unenforceable. While many of the plaintiff's arguments would require an analysis of the surrounding facts, the court's determination that the Magnuson–Moss Act precludes enforcement of the Arbitration Agreement

---

**1.** The parties dispute which sales agent with whom the plaintiff dealt. For the purposes of the opinion, whether the plaintiff dealt with Wanda Fisher (as the plaintiff contends) or Ralph Smith (as the defendant contends) is not material. With respect to the transaction, the court will refer to undisputed facts, unless otherwise noted.

dispenses with the need to go into the factual situation in further detail at this time. For a further factual analysis, the court refers the reader to the Report and Recommendation of the Magistrate Judge, at 1–6.

## II.

### A.

The defendant objects to the evidentiary hearing held in this matter on October 15, 1999. Defendants object on the grounds that the agreements between the parties are unambiguous on their faces, thereby triggering the parol evidence rule and prohibiting evidence of anything other than the documents themselves. District courts have jurisdiction under the sections 3 and 4 of the Federal Arbitration Act ("FAA") to adjudicate questions concerning the validity of any arbitration contract or clause. *See* 9 U.S.C. §§ 3,4; *Hooters of America, Inc. v. Phillips,* 173 F.3d 933, 937–38 (4th Cir.1999) (Wilkinson, C.J.); *Glass v. Kidder Peabody & Co.,* 114 F.3d 446 (4th Cir.1997). The FAA states that, in any suit brought in federal court on any issue referable to arbitration, *"upon being satisfied* that the issue involved in such a suit ... is referable to arbitration [the court] shall stay the trial." 9 U.S.C. § 3 (emphasis added). The Supreme Court has interpreted this as calling for a hearing with a restricted inquiry into factual issues. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Where the parties contest the enforceability of an agreement and an evidentiary hearing is necessary to determine whether a contract is valid, as in the present case, the court would be remiss not to hold a hearing. This case has raised a myriad of complex problems that the court has labored to resolve. The Magistrate, recognizing that such a situation was present, was proper and responsible to hold the October 15, 1999 hearing in this case.

### B.

The parties contest whether the Arbitration Agreement is a part of the contract for the purchase and sale of the mobile home, or whether the Arbitration Agreement is a separate agreement. The Magistrate found that the contract and the Arbitration Agreement were two separate agreements. Furthermore, the Magistrate found that, because the contract was fully executed and capable of standing on its own prior to any mention of the arbitration agreement, the two documents are separate. The defendant objects to this holding on the grounds that the Arbitration Agreement itself purports to be a part of the contract. The Arbitration Agreement begins by stating:

> This Arbitration Agreement ("Agreement") is executed contemporaneously with, and as an inducement and consideration for, an installment and sales contract ("Contract") for the purchase of a manufactured home ("Home") as described in the Contract ... The parties hereto acknowledge that this Agreement is part of the Contract and that this contract evidences a transaction in interstate commerce governed by the Federal Arbitration Act.

However, the Contract states:

> Your purchase of the Manufactured Home is subject to the terms of this Contract. "Contract" means this document and any separate document that secures this Contract.

The Arbitration Agreement does not secure the Contract. Although the Contract incorporates other documents by reference, such as the warranty, one searches the six pages of the contract in vain for any reference to arbitration or an arbitration agreement. Virginia contract law requires a plain reading of a contract where the language therein is unambiguous. *See Dominion Sav. Bank, FSB v. Costello,* 257 Va. 413, 416, 512 S.E.2d 564 (1999); *Management Enterprises, Inc. v. Thorncroft Co., Inc.,* 243 Va. 469, 472, 416 S.E.2d 229 (1992). The plain reading of the Con-

tract—the validity of which is not challenged by any party—is that the Contract and any attendant securing document, plus those documents incorporated by reference, shall constitute the entire agreement between the parties as to the purchase of the home. To hold that the Arbitration Agreement is a part of the Contract, the court must look beyond the four corners of the valid, fully executed Contract. Thus, the Contract indicates that the Arbitration Agreement is not part of the Contract, but rather, is a separate agreement between the parties.

■ The court has considered whether the Contract and the Arbitration Agreement should be treated as one contract based on the fact that they appear to be part of a contemporaneous transaction. In the context of deeds and underlying notes, Virginia law holds that they shall be deemed separate agreements. *Virginia Housing Development Authority v. Fox Run Ltd. Partnership*, 255 Va. 356, 364–65, 497 S.E.2d 747 (1998). However, where notes and agreements are contemporaneous, they may be treated as one, "[s]o long as neither document varies or contradicts the terms of the other." *Id.* On their faces, the Contract and the Arbitration Agreement conflict with one another: the Contract explicitly details that which shall be considered part of the contract, clearly omitting the Arbitration Agreement, whereas the Arbitration Agreement plainly states that it is part of the Contract. The parties do not challenge the validity of the Contract, but vehemently disagree over the propriety of the Arbitration Agreement. The parties also do not dispute that the Contract was fully executed by the parties prior to any mention of arbitration.[2] The court relies on the plain meaning of the document that is relied upon by both of the parties which, read for its plain meaning, indicates that the Arbitration Agreement is not contemplated as part of the Contract.

Having determined that the Arbitration agreement and the Contract are two separate agreements, between the parties, the court shall look to the Arbitration Agreement to determine whether it is a valid document such that the defendants' motion to compel arbitration can be granted.

### III.

■ The defendants invoke the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, as authority for their motion to compel arbitration. The judiciary has recognized that Congress, in enacting the FAA, expressed a preference in favor of arbitration, which the judiciary has enforced. *See Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. 927. The FAA creates a " 'heavy presumption of arbitrability,' " such that " 'when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.' " *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir.1996) (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir.1989)). Nevertheless, "[a]rbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

■ The FAA serves the purpose of putting arbitration agreements "on the same footing" as other contracts. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). As the Supreme Court has held, "arbitration is simply a matter of contract between the parties." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Accordingly, arbitration agreements are

---

**2.** There is disagreement between the parties over whether arbitration was ever discussed. However, even if it was, according to the defendant, it was not raised until after the full execution of the Contract. (Oct 15, 1999 Transcript at 94, 99.)

enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Marrowbone Dev. Co. v. District 17*, 147 F.3d 296, 300 (4th Cir.1998) ("[T]he obligation to arbitrate is a creature of contract and ... a party cannot be required to submit to arbitration unless he has agreed to do so in a contract.") "It [i]s for the court, not the arbitrator, to decide in the first instance whether the dispute [is] to be resolved through arbitration." *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 937–38 (4th Cir.1999) (Wilkinson, C.J.). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts," giving due regard to the federal policy favoring arbitration. *First Options*, 514 U.S. at 944, 115 S.Ct. 1920.

■■■ Although there is a preference in the FAA favoring arbitration, the threshold question is whether a particular claim is even arbitrable. *See Hooters*, 173 F.3d at 937 (quoting *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 651, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). "Although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647.

It is clear that the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, applies to the parties in so far as it regulates Oakwood's warranty for Pitchford's mobile home. The question before the court, therefore, is whether disputes involving issues arising under the Magnuson–Moss Act can properly be submitted to binding arbitration, as called for by the parties' Arbitration Agreement. The burden is on the plaintiff to show that Congress intended to preclude a waiver of a

judicial forum for Magnuson–Moss claims. *See Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647.

### A.

■■■ In 1974, Congress enacted the Magnuson–Moss Act "In order to improve the adequacy of information available to consumers [and] prevent deception." 15 U.S.C. § 2302(a). In the Magnuson–Moss Act, Congress evinces a clear policy to "encourage warrantors to establish procedures whereby customer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C. § 2310(a)(1). Congress explicity empowered the Federal Trade Commission ("FTC") to prescribe rules setting forth the minimum requirements for any informal dispute settlement mechanism ("mechanism") to be used in conjunction with a written warranty. *See id.* at § 2310(a)(2). "The FTC regulations are extensive and address all facets of the mechanisms' operation." *Wolf v. Ford Motor Co.*, 829 F.2d 1277, 1279 (4th Cir. 1987). Regulations and interpretations of an Act promulgated under the express delegation of Congress are entitled to judicial deference. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) ("The Court has often repeated the general proposition that considerable respect is due the interpretation given [a] statute by the officers or agency charged with its administration" (internal citations and quotations omitted)).

The FTC has made it clear that, although Magnuson–Moss encourages the use of mechanisms, such mechanisms must conform to the minimum requirements as expressed in 16 C.F.R. § 703, *et seq.* Informal settlement dispute mechanisms are the Act's only exception to Congress's clear rule preserving a judicial forum for consumers. *See* 15 U.S.C. § 2310(d) (a consumer damages by a warrantor "may bring suit for damages and other legal and equitable relief"). The applicable Code of Federal Regulations holds that "Decisions

of the Mechanism shall not be legally binding on any person ... In any civil action arising out of a warranty obligation and relating to a matter considered by the Mechanism, any decision of the Mechanism shall be admissible in evidence, as provided in section 110(a)(3) of the Act." 16 C.F.R. § 703.5(1). Section 703.5(j) makes it clear that mechanisms under Magnuson–Moss cannot contemplate binding resolution of a warranty dispute. *See also Wilson v. Waverlee Homes,* 954 F.Supp. 1530, 1538 (M.D.Ala.1997) *aff'd,* 127 F.3d 40 (11th Cir.1997) (table) (legislative history reflects congressional intent that any non-judicial dispute resolution would be non-binding, with consumers always retaining right of access to courts). Furthermore, the federal regulations state:

> A warrantor shall not indicate in any written warranty ... either directly or indirectly that the decision of the warrantor ... or any designated third party is final or binding in any dispute concerning the warranty ... Nor shall a warrantor ... state that it alone shall determine what is a defect under the agreement. Such statements are deceptive since section 110(d) of the Act gives state and federal courts jurisdiction over suits for breach of warranty ...

16 C.F.R. § 700.8; *see also* 40 Fed.Reg. 60168, 60211 (1975) ("reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the [Magnuson–Moss] Act").

▆▆▆ Contrary to the regulations, Oakwood explicitly states in its Arbitration Agreement that disputes or controversies arising out of the warranty (among other things) shall be submitted to a third party for binding arbitration. The regulation prohibits the aforementioned in written warranties, yet Oakwood includes the language in its Arbitration Agreement. The language does not appear in Oakwood's warranty because, contrary to federal regulation, Oakwood's warranty contains no explanation of the informal dispute settlement mechanism Oakwood intends to use.

*See* 16 C.F.R. § 701.3(6) (requiring warrantors to include in the warranty information regarding its chosen mechanism). The fact that the disallowed statement regarding jurisdiction over warranty disputes is contained in the Arbitration Agreement rather than the warranty does not change the FTC's characterization of such a statement as "deceptive." To allow Oakwood to include the warranty in the binding arbitration agreement where federal law prohibits a binding arbitration agreement to be incorporated into the warranty would be an evisceration of the purpose and effect of the Magnuson–Moss Act.

The clear intent of Magnuson–Moss, as explicitly detailed in the attendant regulations is to encourage alternate dispute settlement mechanisms, but to not deprive any party of their right to have their warranty dispute adjudicated in a judicial forum. *See* 15 U.S.C. § 2310(a)(1); 16 C.F.R. §§ 700–703. Other federal courts to address this issue have also concluded that Magnuson–Moss precludes binding arbitration of disputes over written warranties. *See Wilson,* 954 F.Supp. at 1532 (case of first impression concluding that enforcement of binding arbitration clause in contracts for sale and financing of mobile home would violate Magnuson–Moss Warranty Act); *see also Raesly v. Grand Housing, Inc.,* 105 F.Supp.2d 562, 573 (S.D.Miss.2000) ("binding arbitration of written warranties, in transactions to which the Magnuson–Moss Warranty Act applies, is forbidden by that Act"); *Boyd v. Homes of Legend, Inc.,* 981 F.Supp. 1423 (M.D.Ala.1997) (Congress intended the Magnuson–Moss Act to preclude mandatory binding arbitration of written warranties). In *Wilson,* the Middle District of Alabama was apparently the first federal court to address the question of whether the Magnuson–Moss Act precludes agreements at the time of sale to binding arbitration of warranty disputes. *See Wilson,* 954 F.Supp. at 1537. That court performed an in depth review of the Congres-

sional intent of the Magnuson–Act to which this court conforms. *See id.* at 1537–39. Based on this and the foregoing analysis, the court holds that there can be no agreement at the time of sale to enter into binding arbitration on a written warranty.

#### B.

Contrary to the mandate of the Magnuson–Moss Act, the Arbitration Agreement between the parties requires binding arbitration of disputes arising under Oakwood's warranty. Thus, the court must next decide what effect the invalidity of said portions of the Arbitration Agreement have on the remainder of the agreement. In *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218–19, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Supreme Court held that when a particular claim is found to be inarbitrable, a court must compel arbitration for otherwise arbitrable claims notwithstanding the likely inefficiency of bifurcating the proceedings. The Court explained that, although there was congressional intent for efficient proceedings, the stronger express intent of Congress with the FAA was to place arbitration agreements on the same footing as other contracts. *See id.* When contractual principles make an arbitration agreement enforceable, such agreement could not be displaced in the interest of efficiency. *See id.* Supreme Court precedent holds that the purpose of the FAA was to treat arbitration agreements like contracts, but to construe such contracts in favor of arbitration whenever there was a doubt as to the arbitrability of the dispute. *See e.g., First Options,* 514 U.S. at 944, 115 S.Ct. 1920. Accordingly, in deciding the defendants' motion to compel arbitration, this court does not consider the potential inefficiency of bifurcating the plaintiff's claims, but rather focuses its concern on whether contractual principles would hold that the Arbitration Agreement between the parties is enforceable, notwithstanding the portions in violation of the Magnuson–Moss Act.

In order to determine the issue of whether the contract between the parties to arbitrate is enforceable notwithstanding certain unlawful provisions, the court must apply Virginia laws of contract. *See First Options,* 514 U.S. at 944, 115 S.Ct. 1920. A contract shall be considered as a whole when, "by its terms, nature, and purpose it contemplates and intends that each and all of its parts and the consideration shall be common each to the other and interdependent." *Shelton v. Stewart,* 193 Va. 162, 167, 67 S.E.2d 841 (1951) (citations and quotations omitted). However, Virginia law does permit clauses of contracts to be severed from the main contract if the parties manifest the intent that the portions of the contract can survive on their own. *See e.g., Reistroffer v. Person,* 247 Va. 45, 439 S.E.2d 376 (1994) (provision regarding attorney's fees was severable and survived nullified contract); *Vega v. Chattan Assoc.,* 246 Va. 196, 199, 435 S.E.2d 142 (1993) ("Whether contractual provisions are severable is determined from the intention of the parties") (citing *Eschner v. Eschner,* 146 Va. 417, 422, 131 S.E. 800 (1926)).

Virginia courts have also recognized the difference between severing a clause or provision of a contract, and rewriting or "blue penciling" a contract in order to make it enforceable. *See Nida v. Business Advisory System, Inc.,* 44 Va. Cir. 487, 1998 WL 972125, *5 (Va. Cir. Ct. Mar. 2, 1998). Although Virginia courts will look to the intent of the parties to determine severability of clauses or provisions, they will not "blue pencil" a contract to make it enforceable. *See Cliff Simmons Roofing, Inc. v. Cash,* 1999 WL 370247, *1–2 (Va. Cir. Ct. June 4, 1999) (refusing to edit contract by selectively enforcing only those portions permissible by law); *Nida,* 1998 WL 972125 at *5 ("Generally, Virginia courts do not rewrite the parties contract for them"); *Pais v. Automation Products, Inc.,* 36 Va. Cir. 230 (1995) ("[T]his court has not been granted the authority to 'blue pencil' or otherwise

rewrite the contract, the covenants therefore fail"). Therefore, it is critical to determine whether the Arbitration Agreement at issue is subject to severability or blue penciling.

■ "The difference between "blue penciling" and severing is a matter of focus. The former emphasizes deleting, and in some jurisdictions adding words in a particular clause. The latter emphasizes construing independent clauses independently." *Roto–Die Co., Inc. v. Lesser,* 899 F.Supp. 1515, 1523 (W.D.Va.1995) (refusing to interpret Virginia law as permitting blue pencil rule). The Arbitration Agreement between Oakwood and Pitchford maintains throughout that the arbitration shall be binding and that it includes any claims on the warranty. There is no isolated clause about either the fact that the parties shall be bound or the inclusion of the warranty. The structure and nature of the Arbitration Agreement indicate that all parts contemplate interdependence. *See Shelton,* 193 Va. at 167, 67 S.E.2d 841. Based on the drafting of the contract on its face, severability is unavailable because there is no particular clause or provision that could be treated independently to cure the conflict with the Magnuson–Moss Act. To the contrary, in order to cure the problems with the Arbitration Agreement, the court would be forced to edit the agreement in one of two ways: the court would have to remove all reference to the warranty or remove all reference to the fact that the arbitration must be binding. As noted above, this form of blue penciling is precisely what Virginia courts consistently have refused to engage in. The court sees the wisdom of the refusal to rewrite the contract between the parties because to do so would be to wreak potential havoc with basic contractual principles, such as mutual assent.

Bearing closely in mind the strong federal preference for arbitration, the court must also follow the statutory directive that arbitration agreements "shall be valid, irrevocable, and enforceable, *save upon such grounds* as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). Because the Arbitration Agreement between the parties is in violation of the Magnuson–Moss Act and can only be cured through blue penciling—a procedure disallowed in Virginia—the agreement is unenforceable.[3]

### IV.

For the foregoing reasons, the defendants' motion to compel arbitration and stay the proceedings shall be denied. An appropriate Order shall this day enter.

### *ORDER*

Before the court is the defendants' Motion to Compel Arbitration, which was filed in state court prior to the July 6, 1999 removal of the above-captioned civil action to this court. Defendants' Memorandum in Support of Motion to Compel was filed on August 24, 1999, and the action was referred by Order of the court dated August 30, 1999, to presiding United States Magistrate Judge B. Waugh Crigler for proposed findings of fact and a recommended disposition. The Magistrate filed his Report and Recommendation on December 20, 1999, to which both parties filed timely objections. Accordingly, the court has performed a *de novo* review of those portions of the Report and Recommendation to which objections were made. *See* 28 U.S.C. § 636(b)(1)(C). Having thoroughly reviewed the Report and Recommendation, all memoranda of the parties, the entire record, the applicable case law, and for the reasons stated in the accompanying Memorandum Opinion, it is accordingly this day

ADJUDGED ORDERED AND DECREED as follows:

---

**3.** The plaintiff's additional arguments as to invalidity of the Arbitration Agreement based on intent, lack of consideration, and unconscionability, are not herein addressed because, based on the court's holding, these issues need not be decided.

(1) The ultimate recommended disposition in the Magistrate Judge's December 20, 1999 Report and Recommendation shall be, and hereby is ACCEPTED, but the court has reached its decision on different grounds from the Magistrate, as detailed in the accompanying Memorandum Opinion.

(2) The defendants' January 18, 2000 Objections to the Report and Recommendation shall be, and hereby are, OVERRULED.

(3) The plaintiff's January 3, 2000 Objection to the Report and Recommendation shall be, and hereby is, SUSTAINED.

(4) The defendants' Motion to Compel Arbitration shall be, and hereby is, DENIED.

(5) The above-captioned civil action shall be referred back to the Magistrate Judge pursuant to the August 30, 1999 Order of the court.

The Clerk of Court hereby is directed to send a certified copper of this Order and the accompanying Memorandum Opinion to Magistrate Judge Crigler and all counsel of record.