# CIRCUIT COURT OF THE CITY OF RICHMOND

Charles Aquino
Architect, P.C.

v.

Connie Hill
and Stephen Hill

June 18, 2013

Case No. CL12-2591

BY JUDGE MELVIN R. HUGHES, JR.

This breach of contract action was tried without a jury on June 12, 2013. At the conclusion of the evidence, the Court took the matter under advisement to review the numerous exhibits offered into evidence during the trial.

The evidence revealed that the parties entered into a contract (the "Contract") for the "Design and Design Development" of architectural plans for a residence to be constructed on land owned by the Defendants in Madison, Virginia. Charles Aquino is an architect, principal, and owner of Charles Aquino Architect, P.C., the Plaintiff. Plaintiff alleges that Defendants, husband and wife, breached the Contract when they repudiated it and failed to pay for submitted design drawings under the "Design and Design Development" provision of the Contract. Plaintiff contends 3.5% of the "Construction Cost of the Project," is due for the work including the firm's overhead and profit under the Contract. Defendants deny liability on the ground that Plaintiff failed to satisfy the performance obligations of services required under the contract.

The evidence further revealed that a series of meetings and communications between Aquino and the Defendants led to four prospective designs for Defendants' future home (the Plan). Testimony of the parties established that Defendants liked Plan 1 (Plaintiff's first design) the most, however, they wanted it reduced in scale to conform to their budget of between $600,000 and $700,000. In addition to a reduction in scale, Defendants also wanted certain additions (rooms and bathroom) made to Plan 1. Aquino testified that the additional rooms requested by the

Defendants required any design to be over the minimum square footage that Defendants desired, which naturally increased the cost of construction. On the other hand, Defendants wanted Plan 1 to be reduced in scale while making the additions and for the ultimate cost to be at most $700,000. Plaintiff attempted to meet their specifications but was unable to make the requested additions and quality of materials at a cost of less than $700,000. After later meetings and discussions, Defendants were presented with three additional Plans, successively 2, 3, and 4.

After Plaintiff submitted Plan 4, Plaintiff contacted a potential builder, Dallas Barnes, for a cost estimate of Plan 4. Defendants agreed and met with Barnes on site. There, Barnes, with the Defendants participating, staked corners for the footprint of the home, so that the construction would offer the best mountain views. At the conclusion of this meeting, Defendants asked Barnes for (1) a measurement of square feet for the Plan and (2) an estimate on cost per square foot. Barnes calculated the size of the Plan to be 4,150 square feet and estimated that the cost could range from $200 to $250 per square feet. This put the construction cost in the range of $830,000 to $1,037,500, over the maximum budget limit of $700,000. Defendants agreed to meet later with Aquino and Barnes to review the Outline Specifications of Plan 4.

At this meeting, the parties and Barnes reviewed the various costs line by line and Aquino and Barnes offered suggestions on how to lower the overall cost of Plan 4. Defendants later communicated to Plaintiff via email stating that they were "surprised" and "shock[ed]" over the cost details and expressed their unwillingness to go further with Plaintiff at that time. Plaintiff then invoiced Defendants per the Contract based on the cost estimate of Plan 4 minus certain costs that would have been added for construction. These costs included a whole house generator, septic system, well, and a basement. This brought the estimated construction cost to $898,401 of which Plaintiff now seeks 3.5% for "Design and Design Development" under the Contract. The Court finds that Plaintiff is entitled to recover on this provision and on Article 4 of the Contract.

Under Article 4 of the Contract, "Termination, Suspension, or Abandonment," "[i]n the event of termination, suspension, or abandonment of the Project by the Owner, the Architect shall be compensated for services performed." The basis for the services to be performed is indicated in the parties' contract. While evident that the whole purpose of the Contract was not fulfilled, the part for which Plaintiff seeks compensation is severable as evidenced by the terms of the writing. "Whether contractual provisions are severable is determined from the intention of the parties." *Vega v. Chattan Assocs.*, 246 Va. 196, 199, 435 S.E.2d 142, 143 (1993). Whether a contract is severable "is a question of construction as to the intention of the parties to be discovered in each case from the language employed and the subject matter of the contract. *Eschner v. Eschner*, 146 Va. 417, 422, 131 S.E. 800,

802 (1926). Here, the total payment would have been 8% if the project was completed; however, this 8% is divided by the contract into: 3.5% for the "Design and Design Development" phase and 4.5% for the "Construction Documents" as well as a fee of $85 per hour for additional services provided by "the Architect" for "the Owners" during the construction phase of the Contract. There is consistency in light of the staging of the work from design to construction, and there is nothing that detracts from the view that the Contract terms are divisible or independent. *See id.*

Thus, in consideration of all the circumstances, Plaintiff substantially completed the Design and Development phase, which, again, is severable. Plaintiff is due 3.5% based on the "Construction Cost of the Project" pursuant to the Contract. And, while it may be argued that the modifications Defendants called for later were given without consideration for this limitation, there is no dispute that the specified budget range was explicitly given as material to the design phase. Thus, with Plaintiff's substantial performance of the design and design development phase of the Contract, the Construction cost should have been at most $700,000. Defendants also owe Plaintiff $138.18 for printing costs[1] as well as interest as of April 28, 2012 listed on the April 24, 2012, invoice. Defendants did not dispute the date listed as the Invoice Date. The Defendants should have received Plaintiff's invoice within a few days after Plaintiff putting the invoice in the mail. Therefore, Plaintiff shall have judgment against the Defendants in the amount of $24,638.18 plus interest.

---

1. The Contract states that "Reimbursable Expenses are limited to printing costs."