PRESENT:  All the Justices

WILLIAM SCHUILING

                                          OPINION BY
v.    Record No. 121582        JUSTICE WILLIAM C. MIMS
                                        September 12, 2013
SAMANTHA HARRIS


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                          Leslie M. Alden, Judge

     In this appeal, we consider whether a provision in an

arbitration agreement designating a specified arbitrator is an

integral part of the agreement, thereby rendering the agreement

unenforceable upon the unavailability of the designee.

          I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     The facts are not in dispute.  In 2007, William Schuiling

hired Samantha Harris as his full-time, live-in housecleaner.

As a condition of her employment, Harris signed an arbitration

agreement ("the Agreement").  The Agreement consisted of a one-

page, pre-printed form under the heading "Brown Automotive

Group" titled "Arbitration Agreement."[1]  The Agreement provided

in relevant part:

          This Agreement is entered into between
     William Schuiling & Brown's Auto [sic]
     ("Employer") and Samantha Harris
     ("Employee").
          Employee enters into this Agreement in
     consideration of Employer's promises herein
     contained and in consideration of
     Employer's employment of Employee or, in
     the event Employee was already employed by

_____

     [1] Schuiling owns Brown Automotive Group.

Employer at the time of the execution of this Agreement, Employee's continued employment by Employer.

The parties hereby agree as follows:

1. Any and all claims, disputes or controversies arising out of or related to Employee's employment by Employer shall be resolved exclusively by arbitration administered by the National Arbitration Forum under its code of procedure then in effect. The determination or award rendered therein shall be binding and conclusive upon the parties. Any modification or alteration of this Agreement shall be in writing and signed by the parties.

2. Except as provided in paragraph 3, the claims that the parties hereby agree to resolve by arbitration include any causes of action of any kind whatsoever, whether statutory or based on common law, at law or in equity, regardless of the relief or remedy sought, in tort, contract, by statute, or on any other basis, including but not limited to any and all claims, demands, rights, or causes of action arising out of Employee's employment with Employer or any employment contract . . . .

5. If any provision of this Agreement or any part of any provision is determined to be invalid or unenforceable in whole or in part for any reason, it shall be severable from the rest of this Agreement and shall not affect any other provision of this Agreement, all of which shall remain in full force and effect and be enforceable according to their terms.

In 2011, Harris filed a 10-count complaint against Schuiling alleging multiple torts, statutory violations, and breach of contract. Relying on the Agreement, Schuiling filed a motion to enforce arbitration under Code § 8.01-581.02(A). In an accompanying memorandum, Schuiling stated that the

National Arbitration Forum ("NAF") was no longer available to administer the arbitration and requested the circuit court to appoint a substitute arbitrator under Code § 8.01-581.03.

Harris opposed the motion, arguing that the first enumerated paragraph of the Agreement exclusively designated NAF as the arbitrator. Relying on several decisions of federal and other states' courts, she contended the Agreement's exclusive designation of NAF was an integral part of the Agreement. Accordingly, she continued, the parties' agreement to arbitrate was conditioned on NAF conducting the arbitration. She concluded that its unavailability, coupled with the Agreement's failure to provide for the appointment of a substitute arbitrator, rendered the Agreement unenforceable.

The circuit court agreed with Harris and entered an order denying the motion to compel arbitration. We awarded Schuiling this interlocutory appeal pursuant to Code § 8.01-581.016(1).

## II.  ANALYSIS

In his first assignment of error, Schuiling asserts that the circuit court's ruling pays insufficient deference to the General Assembly's expressed public policy preference that arbitration agreements be enforced. He argues that pursuant to Code § 8.01-581.01, arbitration agreements are presumed to be valid, enforceable, and irrevocable and Code § 8.01-581.02(A) requires the court to order the parties to such agreements to

3

proceed to arbitration.  Accordingly, he concludes, the court erred when it determined that it could not appoint a substitute arbitrator under Code § 8.01-581.03.[2]

We have held that the statutory scheme enacted by the General Assembly favors the enforcement of arbitration agreements.  TM Delmarva Power, L.L.C. v. NCP of Va., 263 Va. 116, 122, 557 S.E.2d 199, 202 (2002).  However, that preference is not absolute.  There is no provision in the statutory scheme prohibiting the parties from agreeing to limit the scope of its operation.  See id. at 123, 557 S.E.2d at 202 (noting that both public policy "and the plain language of" the arbitration provision required arbitration) (emphasis added).[3]  The dispositive question in this case, then, is whether Schuiling and Harris limited their agreement to arbitrate by making it conditional upon NAF conducting the arbitration.  That question

---

[2] Code § 8.01-581.03 provides in relevant part that
> [i]f the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed.  In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint one or more arbitrators.

[3] The General Assembly has spoken in express terms when it intends to restrict the parties' ability to form their preferred agreement.  See, e.g., Code § 11-4.1 (declaring any provision of a construction contract purporting to indemnify a party from liability arising from his own negligence "against public policy" and "void and unenforceable").

4

is the subject of Schuiling's second assignment of error, to which we now turn.

The circuit court determined that the Agreement exclusively designated NAF as arbitrator, that the designation was an integral part of the contract, and that NAF's unavailability rendered the whole Agreement unenforceable. Schuiling argues the Agreement's severability clause evidences the parties' intention to arbitrate their disputes irrespective of the NAF's unavailability. Conversely, Harris argues that NAF's designation cannot be severed because it is integral to the Agreement.

We review a circuit court's interpretation of a contract de novo and "'have an equal opportunity to consider the words of the contract within the four corners of the instrument itself.'" Uniwest Constr., Inc. v. Amtech Elevator Servs., 280 Va. 428, 440, 699 S.E.2d 223, 229 (2010) (quoting Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002)).

> The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.

Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984) (quoting Meade v. Wallen, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984)).  We construe the contract as a whole, giving terms their ordinary meaning unless some other meaning is apparent from the context.  Virginian Ry. Co. v. Hood, 152 Va. 254, 258, 146 S.E. 284, 285 (1929).  The various provisions are harmonized, giving effect to each when reasonably possible, and are construed considering the circumstances under which they were executed and the condition of the parties.  Id.

A contract is either entire, meaning all its provisions are integral to the agreement of the parties, or severable. Eschner v. Eschner, 146 Va. 417, 422, 131 S.E. 800, 802 (1926); accord Budge v. Post, 544 F.Supp. 370, 381-82 (N.D. Tex. 1982). Thus, whether a provision is severable or integral is the same inquiry:  a provision integral to the parties' agreement cannot be severed and one the parties intended to make severable is not integral.[4]  Accordingly, the analysis is identical:  "No precise or invariable rule can be laid down . . . for it is a question of construction as to the intention of the parties to

_____

[4] Compare Stewart v. GGNSC-Canonsburg, L.P., 9 A.3d 215, 220 (Pa. Super. Ct. 2010) (holding that a court may not sever an integral provision) and John R. Ray & Sons v. Stroman, 923 S.W.2d 80, 87 (Tex. App. 1996) (citing Budge) (holding that the existence of a severability clause will not, alone, support the severance of an integral provision) with Jones v. GGNSC Pierre LLC, 684 F.Supp.2d 1161, 1167 (D.S.D. 2010) (holding that a severability provision may indicate that a provision was not integral).

6

be discovered in each case from the language employed and the subject matter of the contract." Eschner, 146 Va. at 422, 131 S.E. at 802 (internal quotation marks and citation omitted); accord Vega v. Chattan Assocs., 246 Va. 196, 199, 435 S.E.2d 142, 143 (1993); see also Stewart v. GGNSC-Canonsburg, L.P., 9 A.3d 215, 220 (Pa. Super. Ct. 2010) (assessing the intent of the parties to determine whether provision was integral); Jones v. GGNSC Pierre LLC, 684 F.Supp.2d 1161, 1167 (D.S.D. 2010) (assessing the intent of the parties to determine whether a provision was severable). In addition, the court considers "the situation of the parties and the object they had in view at the time and intended to accomplish." O'Quinn v. Looney, 194 Va. 548, 551, 74 S.E.2d 157, 159 (1953).[5]

Relying on the language used by Schuiling and Harris in the Agreement, several factors support Schuiling's position that the parties intended NAF's designation as arbitrator to be

_____

[5] Many courts have adopted an "integral-versus-ancillary test" to determine whether Section 5 of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., permits the appointment of a substitute arbitrator. See Riley v. Extendicare Health Facilities, Inc., 826 N.W.2d 398, 404-05 (Wis. Ct. App. 2012) (collecting cases). Although the parties contend the Act does not apply in this case, the integral-versus-ancillary test also turns on the intent of the parties when they formed their agreement. Id. at 405. Consequently, a determination of integral or ancillary, severable or not severable is the same determination: did the parties intend the whole arbitration requirement to fail upon the unavailability of the designated arbitrator? The parties' choice to include or omit a severability clause may, depending on its scope, provide insight into their intention.

7

severed if unenforceable. The first is the severability provision itself. It permits severing not only whole provisions but "any part of any provision" "determined to be invalid or unenforceable in whole or in part for any reason," without "affect[ing] any other provision of th[e] Agreement, all of which shall remain in full force and effect and be enforceable according to their terms."

We must give these expansive phrases their ordinary meaning. Hood, 152 Va. at 258, 146 S.E. at 285. "[F]or any reason" includes NAF's unavailability. "[A]ny part of any provision" includes the clause in the first enumerated paragraph designating NAF as arbitrator. Nothing in the severability clause or any other language in the Agreement excludes NAF's designation from the scope of the severability clause; nothing excludes NAF's unavailability as a reason for severance.

Second, as set forth in the first enumerated paragraph, the sole object of the one-page Agreement is to require arbitration of "[a]ny and all claims, disputes or controversies arising out of" Harris's employment. This arbitration requirement comprises the entire subject matter of the Agreement. The Agreement contains no unrelated provisions, such as non-compete, non-disclosure, or non-solicitation provisions, that would survive failure of the arbitration

8

requirement.  It does not address salary, wages, or term of

employment.  The only purpose for the Agreement is to require

the parties to arbitrate any claims "arising out of or related

to" Harris' employment.  Consequently, a determination that

NAF's designation is not severable would defeat the entire

Agreement.  Such an outcome is inconsistent with our obligation

to consider the contract as a whole and harmonize its

provisions, giving effect to each when reasonably possible.

Hood, 152 Va. at 258, 146 S.E. at 285.[6]

Third, Schuiling and Harris are presumed to know that Code

§ 8.01-581.03 directs the circuit court to appoint an

arbitrator when an arbitration agreement fails to appoint or

provide for the appointment of an arbitrator, or when the

appointed arbitrator fails to or is unable to act.  See

Waterfront Marine Constr. v. North End 49ers Sandbridge

Bulkhead Groups A, B and C, 251 Va. 417, 429, 468 S.E.2d 894,

901 (1996) (parties to an arbitration agreement are presumed to

know the provisions of Virginia's statutory scheme).

---

[6] This construction is supported by the second enumerated
paragraph, which specifically lists the claims the parties
"agree to resolve by arbitration."  (Emphasis added.)  It does
not restrict arbitration to arbitration by NAF or make any
reference to the designation in the preceding paragraph.  It
makes clear that the parties' agreement is that the listed
causes of action will be resolved by arbitration, to the
exclusion of other forms of resolution.

Nevertheless, they included no language expressing an intention to limit the court's statutory authority.

Finally, nothing in the Agreement reflects that the parties contemplated the contingency that collateral events might render NAF unavailable and intended the arbitration requirement itself to terminate if that contingency occurred. Mere inclusion of the word "exclusively" in NAF's designation as arbitrator does not serve that purpose. To the contrary, the word "exclusively" indicates nothing more than a designation of the single arbitrator to whose authority each party agreed to submit, presuming the designated arbitrator would be available when called upon.

The inclusion of this particular severability clause, with its broad scope permitting the severance even of parts of provisions and for any reason, reflects that the parties intended NAF to be the exclusive arbitrator so long as it was available. However, if its unavailability made its appointment unenforceable, the designation would be severed. The absence of any provision for the appointment of a substitute arbitrator in such an event reflects nothing more than the parties' presumed knowledge that Code § 8.01-581.03 provided the necessary mechanism. Nothing in the Agreement reflects an intention that the statute should not apply.

In sum, while Virginia's statutory scheme permits the parties to restrict the operation of Code § 8.01-581.03 in their agreement, they must state such an intention in express and unambiguous terms.  Otherwise, the statute must control.[7]

---

[7] The decisions of federal and other states' courts to the contrary cited by Harris are all distinguishable.  For example, the arbitration agreements in Carideo v. Dell, Inc., No. C06-1772JLR, slip op. at 4 n.2 (W.D. Wash. Oct. 26, 2009), similarly provided that all claims "shall be resolved exclusively by arbitration administered by the National Arbitration Forum under its code of procedure then in effect." However, the court noted that neither of the agreements contained a severability clause.  Id., slip op. at 20. Similarly, the Indiana Court of Appeals made no mention of a severability clause in Geneva-Roth Capital, Inc. v. Edwards, 956 N.E.2d 1195 (Ind. Ct. App. 2011) or Apex 1 Processing, Inc. v. Edwards, 962 N.E.2d 663 (Ind. Ct. App. 2012), and no consideration of the effect of one was included in its analyses.

Although the arbitration agreement in Riley did include a severability clause, 826 N.W.2d at 411 n.8, it did not permit severance of "any part of any provision" "for any reason" as the severability clause in this Agreement does.  The court also acknowledged that "'the mere fact parties name an arbitral service to handle arbitrations and specify rules to be applied does not, standing alone, make that designation integral to the agreement.'"  Id. at 410 (quoting Geneva-Roth, 956 N.E.2d at 1200).  Its decision not to sever NAF's designation was influenced by the reason for NAF's unavailability, id., which is not one of the permissible considerations in our determination of whether the designation is severable or integral.  See Eschner, 146 Va. at 422, 131 S.E. at 802; O'Quinn, 194 Va. at 551, 74 S.E.2d at 159.

There also was a severability clause in Green v. U.S. Cash Advance Ill., LLC, No. 12 C 8079, slip op. at 16 (N.D. Ill. Jan. 25, 2013).  However, the arbitration requirement in that case was only one of many provisions in a broad consumer loan agreement and the severability clause made no specific reference to it.  The court determined that failure of the arbitration requirement due to the unavailability of the designated arbitrator would not result in the failure of the parties' entire agreement.  It distinguished cases in which the

11

III.  CONCLUSION

Therefore, relying on the intention of the parties as expressed in the language of the Agreement, we conclude that NAF's designation as arbitrator is not integral and is severable in order to give effect to the arbitration requirement, the sole purpose of the Agreement.  We reverse the order of the circuit court and remand for further proceedings consistent with this opinion.

                                        Reversed and remanded.

---

contracts, like the Agreement here, were stand-alone arbitration agreements.  Id., slip op. at 15.