# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**DOUGLAS B. KING**
**MATTHEW M. ADOLAY**
Wooden & McLaughlin LLP
Indianapolis, Indiana

*Attorney pro hac vice*
**SUSAN VERBONITZ**
Weir & Partners LLP
Philadelphia, Pennsylvania

ATTORNEYS FOR APPELLEE:

**IRWIN B. LEVIN**
**RICHARD E. SHEVITZ**
**VESS A. MILLER**
Cohen & Malad, LLP
Indianapolis, Indiana



FILED

Jan 20 2012, 8:32 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| APEX 1 PROCESSING, INC., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1103-PL-85 |
| | ) | |
| AKEALA EDWARDS, on Behalf of Herself and | ) | |
| Others Similarly Situated, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Louis F. Rosenberg, Judge
Cause No. 49C01-1003-PL-13082

**January 20, 2012**

**OPINION – FOR PUBLICATION**

**MAY, Judge**

Apex 1 Processing, a "payday loan" business, includes in its loan contracts a compulsory arbitration provision. Akeala Edwards brought a class action[1] alleging Apex, doing business as payday lender Paycheck Today, engaged in unfair trade practices. Apex moved to compel arbitration of Edwards' claim, but the trial court denied the motion because the arbitrator designated in the contract was no longer permitted to perform such arbitrations. As the designation of the arbitrator was integral to the arbitration provision, the trial court correctly determined that the agreement was impossible to perform and thus void. We accordingly affirm.[2]

## FACTS AND PROCEDURAL HISTORY

Apex makes payday loans[3] through its website, advertising via a testimonial it takes only "5 minutes to fill out a simple online application." (Appellee's App. at 67.) The arbitration provision in the loan agreement provides "any and all claims . . . shall be resolved by binding individual (and not class) arbitration by and under the Code of Procedure of the

---

[1] Her lawsuit has not yet been certified as a class action.

[2] We heard oral argument October 13, 2011. We commend counsel on the quality of their advocacy.

[3] A "payday loan" is a small, short-term, single-payment, consumer loan. Our Indiana Supreme Court described such loans:

> [T]ypically a payday loan works as follows. The borrower applies for a small loan and gives the lender a post-dated check in the amount of the loan principal plus a finance charge. Depending on the lender, the finance charge varies from $15 to $33. In return, the lender gives the borrower a loan in cash with payment due in a short period of time, usually two weeks. When the loan becomes due, the borrower either repays the lender in cash the amount of the loan plus the finance charge, or the lender deposits the borrower's check. If the borrower lacks sufficient funds to pay the loan when due, then the borrower may obtain a new loan for another two weeks incurring another finance charge.

*Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572, 574 (Ind. 2001), *superseded by statute on other grounds*, *Cash in a Flash, Inc. v. McCullough*, 853 N.E.2d 533, 536 (Ind. Ct. App. 2006).
Edwards alleged her loan carried an interest rate of 782%. (Appellant's App. at 18.)

2

National Arbitration Forum ("NAF") in effect at the time the claim is filed." (*Id*. at 93.) It provides an internet address and a postal address where NAF rules and forms may be obtained, and indicates if a person is unable to pay the cost of arbitration, "fees may be waived by the NAF." (*Id*.) Rule one of the NAF Code of Procedure is that the Code can be administered only by NAF or by an entity providing services by agreement with NAF. (Appellant's App. at 91.)

Apex loaned Edwards $300. On four occasions during the two months thereafter, Apex renewed Edwards' loan after charging her a $90 finance charge each time. Thus, Edwards was ultimately charged $360 in finance charges without any reduction in the $300 principal amount.

After Edwards brought her action, Apex moved to dismiss and to compel Edwards to arbitrate as an individual, not as a class representative. Edwards argued the arbitration clause is unconscionable[4] and is impossible to perform because NAF, the named arbitrator, can no longer arbitrate such disputes.[5] The trial court denied on the ground of impossibility Apex's motion to compel arbitration, finding the designation of NAF as the forum chosen by the parties pursuant to the loan agreement was "integral to the arbitration": "NAF is the instrument chosen by Apex and Edwards to shape the arbitration process. Its designation is,

---

[4] As we agree the arbitration clause is impossible to perform, we need not address Edwards' unconscionability argument.

[5] The Minnesota Attorney General sued NAF to challenge NAF's suspect ties to the consumer loan and debt collection industries. NAF stipulated to a consent judgment pursuant to which NAF agreed not to administer, process, or "[i]n any manner participate" in any arbitration of consumer disputes after July 24, 2009. *Rivera v. Am. Gen. Fin. Servs., Inc.,* 259 P.3d 803, 809 (N.M. 2011).

thus, not a logistical detail, but rather is central to the agreement." (*Id*. at 11.)

## DISCUSSION AND DECISION

Another panel of this court recently addressed a nearly-identical arbitration provision in a contract between Edwards and a different payday lender. *Geneva-Roth Capital, Inc. v. Edwards*, 956 N.E.2d 1195 (Ind. Ct. App. 2011), *petition for reh'g pending*. The *Geneva-Roth* panel determined the contract language, which required arbitration "by and under the Code of Procedures of [NAF]," *id*. at 1197, and required claims be filed at an NAF office, indicated the choice of NAF as arbitrator was "integral" to the arbitration provision. *Id*. at 1203. Because the consent judgment rendered NAF unavailable to arbitrate the dispute, the arbitration provision failed due to impossibility. *Id*.

The language of the Apex contract, like that in the *Geneva-Roth* contract, provides claims "shall be resolved by binding . . . arbitration by and under the Code of Procedure of [NAF]." (Appellee's App. at 93.) Rule one of the NAF Code of Procedure is that the Code can be administered by only NAF or an entity providing services by agreement with NAF. A claim must be filed at an NAF office or on an NAF website. As NAF is no longer arbitrating disputes, nor have the parties suggested there are any entities arbitrating by agreement with NAF, selection of a replacement arbitrator who could resolve the parties' disagreement "by and under the Code of Procedure of [NAF]" is impossible. Thus, the identification of NAF as the arbitrator was integral to the contract, and the arbitration provision fails. We adopt the *Geneva-Roth* panel's reasoning and agree with the trial court that the Apex arbitration provision is impossible to perform because the choice of arbitrator is integral to the

arbitration agreement.

In addition, we address a related issue extensively briefed and argued by the parties during oral argument – whether, in this case, Section 5 of the Federal Arbitration Act (FAA) mandates appointment of a substitute arbitrator. As it does not, we also affirm on that independent ground.

Apex maintains in its brief that even if the arbitration clause is impossible to enforce because of NAF's unavailability, the trial court nevertheless failed to consider preemptive federal law that mandates enforcement of the parties' arbitration agreement under Section 5 of the FAA. That Section states:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. In other words, Section 5 provides a mechanism for, and in fact requires on application of a party, the appointment of an arbitrator in the event the arbitrator chosen by the parties is unavailable. *See*, *e.g.*, *Carr v. Gateway*, *Inc.*, 944 N.E.2d 327, 333 (Ill. 2011) (Section 5 of the Act may be applied to name a substitute arbitrator where the parties' designated arbitral forum fails). Based on this Section, Apex contends the trial court was authorized to select and should have appointed a substitute arbitrator.

Although this was an issue of first impression when Edwards and Apex briefed and argued the case before us, a panel of this court has since decided *Geneva-Roth.* That panel, after reviewing case law from our sister states, noted that while some courts have used Section 5 to uphold arbitration clauses where the chosen forum is unavailable, other courts have held Section 5 cannot save an arbitration provision where the chosen, but unavailable, arbitrator is integral to the arbitration provision because the arbitration provision fails due to impossibility. *Geneva-Roth,* 956 N.E.2d at 1200. After evaluating the reasoning of both lines of case law, mindful that federal and state policy favor arbitration, that panel adopted the 'integral' or 'ancillary logistical concern test' as a means for deciding whether arbitration may be compelled even though the chosen arbitrator is unavailable. This test "is consistent with general principles of contract law requiring courts to give effect to the intent of the parties and . . . 'best complies with the admonition of the United States Supreme Court that a fundamental purpose of the FAA is to require that courts enforce arbitration agreements according to their terms.'" *Id*. at 1201 (quoting *Rivera v Am. Gen. Fin. Servs., Inc*., 259 P.3d 803, 812 (N.M. 2011)).

At a minimum, for the selection of an arbitrator to be "integral" under our test the arbitration clause must include an express statement designating a specific arbitrator. *Id.* An express designation of a single arbitration provider weighs in favor of finding the designated provider is integral to the agreement to arbitrate. *Id.*

As noted above, the arbitration provision in the Apex loan agreement provided that all claims "*shall* be resolved" by binding arbitration pursuant to "to the Code of Procedure of the

6

[NAF]" in effect at the time the claim is filed. (Appellee's App. at 93.) The agreement further informed the parties they could obtain rules and forms from NAF and NAF had the authority to waive the customer's arbitration fees. As did the *Geneva-Roth* panel, we find the express designation of NAF as the arbitration provider in addition to the use of mandatory, as opposed to permissive, contractual language demonstrates the parties intended NAF to be integral to the arbitration agreement. *See Geneva-Roth,* 956 N.E.2d at 1203; *see also Ranzy v. Tijerina*, 393 F. App'x 174, 176 (5th Cir. 2010) (noting repeated use of the mandatory term "shall" demonstrated "the parties explicitly agreed that the NAF shall be the exclusive forum for arbitrating disputes").

Having concluded NAF as the arbitral forum was integral to the arbitration agreement, and given that NAF is no longer available to conduct consumer arbitrations, the arbitration provision is null and void on grounds of impossibility. Section 5 does not save the arbitration provision and cannot be used as a mechanism to appoint a substitute arbitrator. Therefore, the trial court properly denied Apex's motion to compel arbitration, and we accordingly affirm.

Affirmed.

NAJAM, J., and RILEY, J., concur.