## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Christina J. Miller
Lucas, Holcomb & Medrea, LLP
Merrillville, Indiana

ATTORNEY FOR APPELLEE

David R. Phillips
David E. Baum Law Office, P.C.
Chesterton, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Donald W. Harshaw,
*Appellant-Defendant,*

v.

Elizabeth A. Harshaw,
*Appellee-Plaintiff*

July 9, 2015

Court of Appeals Case No.
45A04-1408-PL-397

Appeal from the Lake Superior Court
The Honorable Thomas Webber, Sr., Senior Judge
Cause No. 45D04-1310-PL-91

**Bailey, Judge.**

# Case Summary

[1]     Donald W. Harshaw ("Donald") appeals an order adopting an arbitration award in favor of his former wife, Elizabeth Harshaw ("Elizabeth").  Donald

presents a single consolidated and restated issue for review: whether the trial court properly confirmed the award.[1] We affirm.

## Facts and Procedural History

Donald and Elizabeth were married for twenty-five years. They divorced in 1996 and the dissolution court divided the marital property. Subsequently, they reconciled and cohabitated for over fifteen years. During this time, the couple commingled some of the previously-distributed marital funds and also acquired new assets. In July of 2013, Donald moved out of their shared residence.

On September 27, 2013, Elizabeth filed her Complaint for Damages and Partition of Property. In Count I, Elizabeth sought equitable relief in the form of quantum meruit; in Count II, she sought to partition jointly-owned real estate. Donald answered the complaint, admitting that the real estate should be partitioned and denying that Elizabeth was entitled to any additional recovery. The trial court subsequently ordered the parties to submit a partition agreement.

---

[1] Initially, Donald articulated two issues, with six sub-issues, alleging a lack of evidentiary support for the findings and conclusions and challenging the propriety of the remedies awarded. Elizabeth then asserted that appellate review was limited by the parties' arbitration agreement. In his Reply Brief, Donald responded in part by including a revised statement of issues. Donald articulated the issues before this Court as two issues, concerning whether the parties limited the arbitrator's authority and whether the arbitrator exceeded his power or miscalculated asset values.

[4] On June 3, 2014, the parties jointly submitted to the trial court their Agreement for Binding Arbitration on the demand for equitable relief. The arbitrator selected by the parties conducted an arbitration session on June 9, 2014.

[5] The arbitrator made extensive findings of fact and conclusions thereon. He fashioned an award compensating Elizabeth for her contribution to the acquisition of assets during the period of cohabitation. In pertinent part, the arbitrator determined that Elizabeth should receive a judgment for $435,000.00, payable via an assignment of pension benefits, a Qualified Domestic Relations Order, or an alternate manner acceptable to both parties. Each party was to retain personal property in his or her possession, and Donald was to pay the mortgage, taxes, and insurance pending sale of the former marital residence.

[6] On July 28, 2014, the trial court approved the arbitration award. This appeal ensued.

# Discussion and Decision

## Standard of Review

[7] The purpose of arbitration is to afford parties the opportunity to dispose of controversies in an easier, more expeditious manner than by litigation. *Bopp v. Brames*, 677 N.E.2d 629, 631 (Ind. Ct. App. 1997). To facilitate this purpose, judicial review of arbitration awards is very narrow in scope. *Id.*

[8] An arbitration award may be vacated on specific statutory grounds, including: (1) the award was procured by corruption or fraud; (2) there was evident

partiality; (3) the arbitrator exceeded their powers; (4) the arbitrator refused postponement despite a showing of sufficient cause; or (5) there was no arbitration agreement. Ind. Code § 34-57-2-13(a). An arbitration award may be modified when: (1) there was an evident miscalculation; (2) the arbitrator awarded upon a matter not submitted; or (3) the award is imperfect in a matter of form not affecting the merits of the controversy. I.C. § 34-57-2-14(a).

## Analysis

[9] Donald contends that he and Elizabeth entered into an arbitration agreement that was not "broadly written" but rather was "a specific contract requiring the arbitrator to conform with general principles of law and further requiring that the court review and accept said findings and order." (Reply Brief at 4.) Accordingly, Donald argues that this Court may review all findings and conclusions as if they had been authored by the trial court. According to Donald, the arbitrator gave relief akin to a marital property division and, in so doing, selected an improper valuation date for Donald's pension and disregarded debt. Elizabeth contends that the parties entered into an agreement for binding arbitration and Donald failed to present an issue for this Court consistent with the narrow scope of review available subsequent to alternative dispute resolution proceedings.

[10] This Court will apply ordinary contract principles to determine whether the parties have agreed to arbitrate a dispute. *Geneva-Roth, Capital, Inc. v. Edwards,*

956 N.E.2d 1195, 1198 (Ind. Ct. App. 2011). In interpreting a contract, we give the language of the contract its plain and ordinary meaning. *Id.*

[11] Donald and Elizabeth jointly submitted to the trial court their "Agreement for Binding Arbitration," referencing Indiana Dispute Resolution Rule 3 ("the Arbitration Agreement"). (App. 17.) Section 1 of this rule provides in relevant part:

> the parties may file with the court an agreement to arbitrate wherein they stipulate whether arbitration is to be binding or nonbinding, whether the agreement extends to all of the case or is limited as to the issues subject to arbitration, and the procedural rules to be followed during the arbitration process.

Consistent therewith, the Arbitration Agreement specified that Donald and Elizabeth "expressly confer jurisdiction on the Arbitrator to act as permitted by law with respect to the resolution of all claims and issues pending herein." (App. 17.)

[12] With respect to the effect of an arbitration determination, Section 4(F) of Arbitration Rule 3 provides in relevant part: "If the parties had submitted this matter to binding arbitration on all issues, the court shall enter judgment on the determination."

[13] Donald suggests that the Arbitration Agreement provision for findings and conclusions invokes a procedure akin to that under the Family Law Arbitration Statute, I.C. § 34-57-5-2, affording greater judicial scrutiny. We disagree. Even assuming the availability of family law arbitration procedures to former spouses, no designation to the family law arbitration statute appears in the

Arbitration Agreement. Although findings and conclusions are contemplated, they are specified as the product of binding arbitration:

> The parties have been informed that the Arbitrator shall make written findings of fact and conclusions of law not later than thirty (30) days following the arbitration hearing.
>
> The parties acknowledge that the Arbitrator shall forward a copy of his findings of fact and conclusions of law to all parties participating in the arbitration and the Court; following which the Court shall enter judgment and an Order for entry on the Court docket.

(App. 17.) The Arbitration Agreement was for binding arbitration. The award is subject to attack only upon the statutory grounds applicable to an award arising from binding arbitration.

Donald argues that, in the event the award is considered to have arisen from binding arbitration, he nevertheless adequately raised an issue as to whether the award violates public policy or includes an evident miscalculation. Donald asserts that Elizabeth was effectively awarded maintenance, something not available to non-spouses under the law. As best we can discern, Donald's position is that a remedy not expressly provided for by statute or common law must necessarily be contrary to public policy. He directs us to no authority for this proposition as required by Indiana Rule of Appellate Procedure 46(A)(8).

With respect to miscalculation, Donald attacks both the pension valuation date selected and the amount. However, he did not provide alternative calculations such that the trial court could have, consistent with I.C. § 34-57-2-14(a)(1),

corrected "evident" miscalculation. Donald has not established grounds for modification.

[16] Finally, Donald argues that the arbitrator exceeded his authority by determining that Donald should, for an indefinite period of time, continue to pay certain household expenses without contribution from Elizabeth. Specifically, the arbitrator concluded that Donald should pay mortgage payments, home insurance, and real estate taxes until the former marital home was sold, without being afforded any credit for those payments. In this regard, we agree with Donald.

[17] Elizabeth's complaint sought compensation under a theory of quantum meruit. Also, with respect to the real estate, Elizabeth's complaint sought partition. The parties had agreed to sell the real estate and advised the arbitrator of their stipulation; Count 2 was resolved by a court order as opposed to arbitration.[2] The arbitrator was not tasked with determining an allocation of expenses pending the sale of the real estate.

# Conclusion

[18] The trial court properly confirmed the arbitration award as to the equitable relief count of Elizabeth's complaint. The partition count was not a pending

---

[2] On February 6, 2014, the trial court ordered: "Counsel for the parties shall submit a written agreement as to the partition count of the plaintiff's complaint as orally announced on this date." (App. 16.)

matter submitted for arbitration; accordingly, language purportedly allocating expenses accruing pending sale was superfluous.

[19]     Affirmed.


Barnes, J., concurs.

Riley, J., concurs in part and dissents in part with separate opinion.

| Donald W. Harshaw, | Court of Appeals Case No. |
|---|---|
| *Appellant-Defendant,* | 45A04-1408-PL-397 |
| v. | |
| Elizabeth A. Harshaw, | |
| *Appellee-Plaintiff* | |

**Riley, Judge, concurring in part and dissenting in part.**

[20] I concur with the majority's determination that the trial court properly confirmed the arbitration award as to the equitable relief Count of Elizabeth's Complaint because Donald did not seek the relief available under the Uniform Arbitration Act, but rather sought only to find deficiencies in the Arbitrator's findings. However, I disagree with the majority's finding that the partition Count was not a pending matter submitted for arbitration. Therefore, I must respectfully dissent as to this issue.

[21] In the partition Count of her Complaint, Elizabeth claimed that she had an ownership interest in the real estate located at 2346 Capri Drive in Schererville, Indiana, and she requested the partition of such real estate. In his Counter-Claim, Donald argued that throughout their co-habitation, he had solely paid

the mortgage, real estate taxes, insurance, maintenance, and utilities for the real property. Therefore, he argued that he was entitled to reimbursement from Elizabeth for her pro-rata share of the expenses associated with the real property. Furthermore, while he agreed that the real estate should be partitioned, he claimed that he was entitled to a larger share proportionate to his payment of the expenses.

[22] Prior to the arbitration, the parties stipulated that they would sell the jointly-owned real estate. Thus, at a status conference on February 6, 2014, the trial court ordered the parties to "submit a written agreement as to the partition [C]ount." (Appellant's App. p. 16). However, it does not appear from the docket that any written agreement was ever filed, and no such agreement has been included in the record.

[23] At the start of the arbitration hearing on June 9, 2014, the parties made it clear to the Arbitrator that although they had stipulated to the sale of the real estate, there were several pending issues relating to the partition. Specifically, during her opening statement, Elizabeth stated that

> the disposition of the real estate is at issue. We have an agreement to place it on the market for sale. There . . . is a possibility of $140,000 in equity, give or take, in the house. And one of the issues, I believe, will be what's the proper allocation of that equity and what, if anything, [Elizabeth] is entitled to based upon her reliance on [Donald's] promises and the services that she rendered over the course of the last [fourteen] years.

(Tr. p. 8). Then, during his opening statement, Donald argued that since he vacated the residence in July of 2013, he has "paid the mortgage, the taxes, the

insurance, basically all the expenses of the residence." (Tr. p. 10). "For whatever benefit [Elizabeth] feels she has conferred upon [Donald] in the form of taking care of the house and cooking and laundry and groceries and those sorts of things, we have a counter-benefit of room and board, transportation, all of which were paid from [Donald's] earnings." (Tr. pp. 11-12). Donald also informed the Arbitrator:

> We do have the partition action pending. Our concern here is not only—we've anticipated the residence would have been listed for sale some time ago. Part of the hang-up was that the parties were suggested to, by the realtor, to make certain repairs to the residence. Because of a lack of resources, there's the determination not to make those repairs. But the residence has not yet been listed for sale. [Elizabeth] has continued to reside in the residence since July of 2013, when [Donald] left. And we believe that as we depart today, or before we depart today, this court [*sic*] needs to make a determination that if she is going to remain in the residence, she should be responsible for all the expenses associated with the ownership, use, and occupancy of the residence until such time as it sells.

(Tr. pp. 12-13).

[24] During the hearing, Donald testified that he paid $600 per month for the mortgage, $200 per month in real estate taxes, and $146.08 per month in homeowner's insurance. As such, when questioned by his attorney, Donald explained:

> Q. . . . [Y]ou are seeking contribution back from [Elizabeth] upon – once the home is sold for moneys that you have paid; is that correct?
> A.    Yes, I am.
> Q.    That would include the mortgage, the taxes, and the insurance?
> A.    Everything, yes.
> Q.    You also – you request that she be responsible for payment of those expenses – you haven't lived in the home since January – July of

A. July 6 of 2013. I've been making all the payments on it since.

Q. So, you received absolutely no benefit from your ownership in that property?

A. Nothing.

Q. You may have (inaudible) real estate taxes?

A. Yes, I just made it. I had to pay a late fee because apparently they're mailed out to the address. And no one made me aware that they were due. Got a copy for me so I could pay them.

Q. So you're seeking contribution based upon Indiana law, which would provide you the information in your submission, if that is part of your request?

A. Yes.

Q. You paid for the title insurance to attach to the partition petition because they did not; correct?

A. Yes, I did.

Q. That expense was, I believe, $250?

A. Yes, it was.

Q. Are you asking for possession of the residence until it sells?

A. If the individual that's living in it cannot afford to pay for the mortgage and all the other expenses, then I want possession of the residence. I want the individual out of the house.

(Tr. pp. 161-63).

[25]  Elizabeth, however, disagreed that she should be obligated to reimburse Donald for any of the expenses associated with the real estate. During cross-examination, Donald's attorney questioned Elizabeth as follows:

Q. . . . There's a partition action pending with respect to the residence; correct?

A. That means it's being sold?

Q. Yes.

A. Yes.

Q. You're filing action basically asking to force a sale of that house; correct?

A. We asked for the house to be sold, yes.

Q. Do you feel that you should reimburse [Donald] for any of the

taxes and insurance, mortgage payments on that residence, since you are a co-owner of that residence, for any period of time since it was deeded to you in 2010?

A.    No.

Q.    Do you feel that you should be able to live in the house from this point until the house sells, and [Donald] should continue to pay the taxes and insurance and mortgage payments?

A.    He didn't have to pay it.  That's his decision.

(Tr. pp. 94-95).

[26]    In accordance with the parties' stipulation and the arguments raised during arbitration, the Arbitrator ordered that the "property should be sold as soon as possible; and further order[ed] the parties to cooperate in that regard and in all respects to accomplish [the] same immediately; and further; that they should share the net proceeds from the sale of this real estate between themselves, after closing and sale." (Appellant's App. p. 31).  Pending the sale, the Arbitrator ordered Donald to "continue to pay the monthly mortgage payments, the insurance on this residence, and the real estate taxes when and if the same come due.  No credits shall be afforded to him for any previous or future payments related to these real estate expenses." (Appellant's App. p. 31).  The Arbitrator also clarified that Elizabeth owed "no reimbursement to [Donald] of any mortgage payments, property insurance, real estate taxes utilities, or other expenses advanced and paid by him and related to [Elizabeth's] occupancy of this residence and real estate." (Appellant's App. p. 32).

[27]    While the trial court ordered the partition pursuant to the parties' stipulation, the trial court apparently did not resolve the numerous other issues raised in the Complaint and Cross-Claim, which are part and parcel of the partition.  Thus,

the issues of how the proceeds of the partition should be divided, the payment of expenses pending the sale, and the reimbursement for expenses already paid were matters squarely before the Arbitrator. Accordingly, I would find that the trial court properly confirmed the arbitration award and would affirm the trial court in all respects.